COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-098-CR

 

 

RYAN BRADLEY SHIELD                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Ryan Bradley Shield
appeals his conviction for attempted sexual assault.  In two points, he complains that the evidence
is legally and factually insufficient to support the jury=s deadly weapon finding.  We
affirm.  








Appellant pleaded guilty to
attempted sexual assault.  He also
pleaded true to three prior felony convictions for enhancement purposes.  After hearing all the evidence, a jury assessed
his punishment at twenty years= confinement, and also found that he used or exhibited a deadly weapon
during the commission of the offense. 

The relevant evidence in this
case shows the following:

On the evening of April 21,
2004, April Blackstock and her friend, Regina Bibb, decided to go out to
celebrate Blackstock=s birthday
when they encountered appellant driving next to them on the freeway.  After a brief conversation, appellant decided
to join the women at a nearby bar, where they all had drinks together.

Later that evening, the women
invited appellant to meet them at a local restaurant where Blackstock worked to
eat some breakfast.  Upon arriving at the
restaurant, Blackstock felt sick and went to the back of the building to
vomit.  Appellant followed her while Bibb
went into the restaurant.








As Blackstock approached the
back of the building, appellant made verbal sexual passes at her.  Appellant then grabbed Blackstock, threw her
to the ground, put himself on top of her, and pulled out a knife.  As appellant held the knife to Blackstock=s neck, she testified that he said, AWe=re going to
do this the easy way or the hard way.@  Blackstock tried to fight with
appellant, but had a difficult time due to his weight on her.  Blackstock testified that she Awas scared to death [appellant] was going to cut [her] throat@ and that appellant Ahad full intent to rape [her].@  Blackstock was certain that
appellant had a knife in his hand, and she described the knife as having a Abig, shiny blade@ with a Adark grip.@

After a few minutes had
passed, Bibb went outside to check on her friend and found appellant on top of
Blackstock.  Bibb saw that appellant had
one hand next to Blackstock=s throat and the other hand pinning her down.  Although Bibb saw Asomething@ in
appellant=s hand, she
was not certain that it was a knife.  In
an attempt to stop appellant from hurting Blackstock, Bibb began to physically
attack him.  Eventually, appellant left
the restaurant in his car and the two women went inside to call the
police.  

Officer Bryan Chancellor
stopped appellant less than two miles from the restaurant.  He searched appellant and found one knife in
the front left pocket of his pants and another knife in his rear pocket.  Both knifes were admitted at trial but
Blackstock never identified which knife appellant had used.

Mike Brookshire, an elder in
appellant=s church,
testified on appellant=s
behalf.  Brookshire stated that at a
Sunday prayer meeting, appellant spoke with him about the factual circumstances
of this case and admitted that he was guilty and that he had, in fact, pulled a
knife on a young lady. 








In this appeal, Appellant
contends that the State failed to present any evidence that the knife was
capable of causing death or serious bodily injury, because Blackstock never
identified the knife used in the offense and the State did not offer expert
testimony that the knives recovered were capable of causing death or bodily
injury.

Section 1.07(a)(17) of the
penal code defines a deadly weapon as Aa firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury@ or Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@[2] 








Although a knife is not a
deadly weapon per se, the court of criminal appeals has held that an object
such as a knife can be a deadly weapon if the actor intends to use the object
in a way which it would be capable of causing death or serious bodily injury.[3]  Factors which are important in determining
whether a knife is a deadly weapon in its use or intended use are: (1) size,
shape, and sharpness of the knife; (2) manner of its use or intended use; (3)
the nature or existence of inflicted wounds;[4]
(4) testimony of the knife=s life-threatening capabilities; (5) the physical proximity between
the victim and the knife; and (6) the words spoken by appellant.[5]  No one factor is determinative; the
fact-finder must examine each case on all of its facts to determine whether the
knife is a deadly weapon.[6]


The record shows in this case
that appellant was on top of Blackstock as he held the knife to her throat and
threatened her, stating AWe are going
to do this the easy way or the hard way,@ that she Awas scared
to death [appellant] was going to cut [her] throat,@ and that she identified the knife as having a Abig, shiny blade@ and a Adark grip.@  Additionally, Bibb testified that she saw
appellant holding Asomething@ next to Blackstock=s throat.








We hold that whether the
evidence supporting the verdict is viewed in a light most favorable to the
verdict,[7]
or whether the entire record is viewed in a neutral light,[8]
there was sufficient evidence from which the jury could have found beyond a
reasonable doubt that appellant used a deadly weapon in the commission of the
offense.  It was not necessary for the
knife itself to have been introduced into evidence,[9]
nor was expert testimony required for the jury to determine that the weapon
used by appellant was, indeed, a knife.[10]  Accordingly, because the evidence is legally
and factually sufficient to support the jury=s finding, we overrule appellant=s points. 

Having overruled appellant=s two points, we affirm the trial court=s judgment.  

 

PER CURIAM

PANEL A:   CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 10, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Tex. Penal Code Ann. '
1.07(a)(17) (Vernon Supp. 2005).  





[3]McCain
v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000); Russell
v. State, 804 S.W.2d 287, 290 (Tex. App.CFort Worth 1991, no pet.).





[4]Wounds
need not be inflicted before a knife can be determined to be a deadly
weapon.  Brown v. State, 716
S.W.2d 939, 946 (Tex. Crim. App. 1986); Rogers v. State, 877 S.W.2d 498,
500 (Tex. App.CFort
Worth 1994, pet. ref=d).





[5]See,
e.g., Thomas v. State, 821 S.W.2d 616, 619-20 (Tex. Crim. App.
1991); Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1985) (op.
on reh=g); Williams
v. State, 575 S.W.2d 30, 32 (Tex. Crim. App. [Panel Op.] 1979); Garcia
v. State, 17 S.W.3d 1, 4 (Tex. App.CHouston [1st Dist.] 1999,
pet. ref=d).   





[6]Thomas, 821
S.W.2d at 620; Gorham v. State, 985 S.W.2d 694, 697 (Tex. App.CFort
Worth 1999, pet. ref=d).





[7]See
Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004)
(setting out the legal sufficiency standard of review).





[8]See Zuniga
v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004) (setting out the
factual sufficiency standard).





[9]See
Morales v. State, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); Gorham,
985 S.W.2d at 697.  





[10]Brown, 716
S.W.2d at 946.